People v Cutler (2024 NY Slip Op 50030(U))

[*1]

People v Cutler

2024 NY Slip Op 50030(U)

Decided on January 11, 2024

Supreme Court, Queens County

Miret, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 11, 2024
Supreme Court, Queens County

The People of the State of New York

against
Cornelius Cutler, Defendant.

Ind. No. 72483-2023

The People by:
Assistant District Attorney Yong Kim, Esq.
Queens County District Attorney's Office
Felony Trial Bureau II
125-01 Queens Boulevard
Kew Gardens, New York 11415
The Defendant by:
Michelle Minkin, Esq.
Queens Defenders
118-21 Queens Boulevard, Floor 2 
Forest Hills, New York 11375

Gary F. Miret, J.

The defendant, Cornelius Cutler, has submitted an omnibus motion, dated October 10, 2023, seeking: inspection of the Grand Jury minutes and dismissal or reduction of the indictment; a bill of particulars; an order invalidating the People's Certificate of Compliance; suppression of evidence; preclusion of evidence; Sandoval/Molineux Relief; and leave to file further motions. The People's response, dated October 31, 2023, consents to some of the relief [*2]sought and opposes other relief.[FN1]
The court decides the motion as follows.
INSPECTION AND DISMISSAL OR REDUCTION
Defendant's motion to inspect the grand jury minutes is granted. The minutes reveal that a quorum of the grand jurors was present during the presentation of evidence and at the time the prosecutor instructed the grand jurors on the law. The indictment substantially conforms to the requirements set forth in CPL § 200.50. The instructions were not defective as a matter of law and the proceedings were proper. Upon inspection of the grand jury minutes and exhibits, this court found the evidence to be legally sufficient to support all counts of the indictment. In the indictment, the defendant and codefendant are charged with one count of Robbery in the First Degree, (Penal Law § 160.15[3]; two counts of Robbery in the Second Degree (Penal Law §§ 160.10 [1],[2a]; and one count of Assault in the Third Degree (Penal Law § 120.00[1]).
The defendant attacks the sufficiency of count one, Robbery in the First Degree (Penal Law §160.15[3]), maintaining the defendants' use of a dangerous instrument was not in immediate flight from the robbery and constituted the uncharged crime of assault in the second degree. The People did not directly address in their response the defendant's argument. Nevertheless, the court finds that there was sufficient evidence that the defendant and codefendant while acting in concert used a dangerous instrument to retain the cellphone from the complainant.
Byron Garcia testified that at about 11:35 p.m. on June 26, 2023, after purchasing food from a 7/11 store in the vicinity of North Conduit Avenue and Rockaway Boulevard, he was walking to a shelter where he lived, about a half a kilometer away from the store. (GJ tr at 4) About half way to the shelter, he was accosted by the defendant and codefendant. The defendant, who was wearing a white shirt, asked him for money.[FN2]
Mr. Garcia gave the defendant some loose change; the defendant threw the coins to the ground and demanded paper money. (GJ tr at 4-5) Both defendants confronted Mr. Garcia. During a struggle, Mr. Garcia fell. The defendant got on top of him, went through his pants pockets and punched him about the face. During this assault, Mr. Garcia's cellphone fell from his pocket and was picked up by the codefendant who gave it to defendant. At that point, the defendant and codefendant walked toward the Seven Eleven store and Mr. Garcia walked to the shelter, about a quarter of a kilometer away. (GJ tr at 4, 6)[FN3]
When he arrived at the shelter, he told the two "Army" men he had been robbed and beaten. One of the Army men called 911 for assistance. Mr. Garcia then went to his residential area in the shelter, changed clothing and returned to the scene to the robbery with the intent to recover his cellphone. He offered $10 to the defendants for the return of his cellphone. Instead, the defendants argued with Mr. Garcia. Fearing for his safety, Mr. Garcia picked up a wood stick to defend himself. Both defendants attacked him, took the stick from Mr. Garcia and knocked him to the ground. Defendant Cutler punched Mr. Garcia in the eye, struck him with the wood stick [*3]and pulled his jacket over his head. Both defendants then struck him about the face, fracturing his nose, and rummaged through his pockets, searching for money. (GJ tr at 7-9)
Meanwhile, Police Officer O'Donnell and her partner were notified of the 911 call and responded to North Conduit Avenue and Rockaway Boulevard, arriving at 11:50 p.m. Upon arrival Police Officer O'Donnell spoke to Mr. Garcia, who was bruised and bleeding from the face. Mr. Garcia told Police Officer O'Donnell he had been robbed after leaving the Seven Eleven store. Thereafter, Police Officer reviewed surveillance footage from the Seven Eleven store and then canvassed the area on Rockaway Boulevard to 158th Avenue. At Rockaway Boulevard and 158th Avenue, Police Officer O'Donnell detained the defendants until Mr. Garcia identified them as his robbers. (GJ tr at 18-20)
A person commits forcible stealing when, during the commission of a larceny, he or she "uses or threatens the immediate use of physical force upon another person for the purpose of preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking." (see Penal Law § 160.00[1].) The defendant seizes upon the phrase "immediately after the taking" and, relying on the factors discussed in People v Robertson, 53 AD3d 791, (3rd Dept 2008) (citing People v Gladman, 41 NY2d 123[1976]), to argue the gap in time, the fact Mr. Garcia went home then returned to the area of the robbery and confronted the defendants while armed with a wooden stick rendered the second confrontation a separate incident unrelated to the robbery of Mr. Garcia's cellphone. (affirmation of defendant's attorney at 9) 
The facts in Gladman involved a robbery of a delicatessen at gunpoint at about 8:00 p.m. The robbery and the description of Gladman were immediately reported to the police. Following the robbery, Gladman walked through the surrounding community and found himself in the parking lot of a bowling alley when he saw a police officer pull into the parking lot. Gladman shot dead the officer after being confronted by him. Witness accounts of the confrontation established the time of the shooting at about 8:25 p.m. The Court of Appeals, in affirming Gladman's conviction for felony murder and other related crimes, observed that "only where the record compels the inference that the actor was not in 'immediate flight' may a felony murder conviction be set aside on the law. The jury should be instructed to give consideration to whether the homicide and the felony occurred at the same location or, if not, to the distance separating the two locations. Weight should also be placed on whether there is an interval of time between the commission of the felony and the commission of the homicide. The jury may properly consider such additional factors as whether the culprits had possession of the fruits of criminal activity, whether the police, watchmen or concerned citizens were in close pursuit, and whether the criminals had reached a place of temporary safety."(Id., at 129) Importantly, the Court observed that "These factors are not exclusive; others may be appropriate in differing factual settings. If anything, past history demonstrates the fruitlessness of attempting to apply ridged rules to virtually limitless factual variations. No single factor is necessarily controlling; it is the combination of several factors that leads to a justifiable inference." (Id., at 129)
Following the robbery of Mr. Garcia's cellphone, he returned to his shelter, a distance he estimated at about a quarter of a kilometer, approximately 820 feet. Mr. Garcia placed the robbery of his cellphone at 11:35 p.m. as he was returning to his quarters at the shelter. After informing the security guards at the shelter that he had been robbed, one of the guards called 911. Police Officer O'Donnell reported she and her partner arrived at Rockway Boulevard and North Conduit Avenue, in proximity of the Seven Eleven store, at 11:50 p.m. (see People v [*4]Thomas, 226 AD2d 120 [1st Dept [1996][Conviction for robbery in the second degree sustained even though altercation occurred some ten minutes after the taking and some four blocks away].) These facts establish that Mr. Garcia sought help and reported the robbery immediately. He returned to the scene of the initial robbery less than fifteen minutes after the robbery and offered the defendants $10 for the return of his cellphone. Significantly, in this sequence, the grand jury was entitled to infer that Mr. Garcia acted promptly and was in close pursuit of the defendants when he returned to retrieve his cellphone. (see People v Williams, 162 AD2d 309 [1st Dept 1990].) The defendants reacted violently to Mr. Garcia's attempt to reclaim his cellphone. Fearing another assault, Mr. Garcia picked up a wooden stick. Importantly, the grand jury was also entitled to infer that the defendant's use of force was not to defend themselves since Mr. Garcia was already disarmed, but was used in furtherance of overcoming resistance by Mr. Garcia from retaking his cellphone. (see People v Miller, 178 AD3d 422, [1st Dept 2019][jury could infer defendant's violent response to victim's attempt to reclaim property incompatible with behavior of person who had innocently obtained property.]; People v Bachmann, 237 AD2d 897 [4th Dept 1997].[evidence that defendant, after leaving store with stolen property, pushed and punched store's loss prevention agent and told agent and store employee that he had a gun established that defendant's use of physical force and threatened use thereof was for purpose of retaining property.].) The grand jury was also entitled to infer the defendants' use of force was sufficiently proximate in time to the original robbery so as to satisfy the requirement of immediacy. (see People v Smith, 233 AD2d 124, [1st Dept 1996].)Accordingly, the evidence before the grand jury was legally sufficient to establish Robbery in the First Degree as alleged in the indictment. Thus, the defendant's motion to dismiss count one of the indictment for legal insufficiency is denied. 
The defendant's motion to release the grand jury minutes is partially moot and otherwise denied. In their certificate of compliance filed on August 24, 2023, the People certified that they had turned over the grand jury transcript to the defendant in accordance with the requirements of CPL § 245.20(1)(b). Thus, the defendant has received the portion of the grand jury transcript to which he is entitled pursuant to CPL § 245.20(1)(b). Otherwise, the defendant's motion is denied because release of the remainder of the grand jury minutes is not necessary to assist the court in determining defendant's motion to reduce or dismiss the indictment.

 REQUEST FOR A BILL OF PARTICULARS
The defendant's motion for a bill of particulars is denied as moot, as the People have provided one with their omnibus response.

 CHALLENGE TO THE CERTIIFCATE OF COMPLIANCE
Article 245 of the Criminal Procedure Law, enacted in January 2020, expanded discovery in criminal cases. Prosecutors are now required to disclose "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction and control" (CPL § 245.20[1]). In making such disclosures, "prosecutor shall make a diligent, good faith effort to ascertain the existence of material or information discoverable under [CPL § 245.20(1)] and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody, or control; provided that the prosecutor shall not be required to obtain by subpoena duces tecum material or information which the defendant may thereby obtain." (CPL § 245.20[2].) In this regard, the statute provides that "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law [*5]enforcement agency shall be deemed to be in the possession of the prosecution." (CPL § 245.20[2].) Once the People satisfy their discovery obligations, they must file a certificate of compliance that "shall state that after exercising due diligence and making reasonable inquires to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery." (CPL 245.50[1].) In addition to this statement, the certificate must include a list of the discovery provided. (Id.)
The People's discovery obligations are ongoing. Should the prosecution learn of additional material or information that it would have been required to disclose pursuant to CPL § 245.20, "it shall expeditiously notify the other party and disclose the additional material and information as required for initial discovery under this article." (CPL § 245.60.) Moreover, if the People provide additional discovery in connection with their ongoing obligations outlined in CPL § 245.60, they must file a supplemental certificate "identifying the additional material and information provided." (CPL § 245.50[1].) Notably, the statute also specifies the "supplemental certificate of compliance shall detail the basis for the delayed disclosure so that a court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance." (CPL §245.50[1-a].) At the same time, the statute also provides that "No adverse consequence to the prosecutor shall result from the filing of a certificate of compliance in good faith and reasonable under the circumstances; but the court may grant a remedy or sanction for a discovery violation as provided in section 245.80 of this article." (CPL 245.50[1].)

 The Present Motion
In his motion, the defendant contends that the People's certificate of compliance was improper because they failed to provide four categories of evidence: (1) unredacted Grand Jury minutes; (2) witness names and contact information; (3) police investigative records, including documents/images related to the identification procedure, witness statements, body worn camera footage and surveillance video; (4) law enforcement disciplinary records; and (5) redactions to police reports

 Grand Jury Minutes
In their certificate of compliance filed on August 24, 2023, the People certified that they had turned over the grand jury testimony to the defense in accordance with the requirements of CPL § 245.20(1)(b). Moreover, the court, having compared defendant's exhibit A, a copy of the redacted grand jury minutes he received in the discovery process, to an unredacted copy of the grand jury minutes, is satisfied the defendant has received the portion of grand jury transcript to which he is entitled pursuant to CPL § 245.20(1)(b). Accordingly, the defendant's motion to invalidate the People's certificate of compliance on this ground is denied.

 Witness Names and Contact Information and related cellphone video and cellphone image related to the identification procedure
Police Officer O'Donnell testified in the grand jury that when she sought surveillance video from the Seven Eleven store she also spoke to several employees and customers as did several other police officers.
Relatedly, while at the Seven Eleven store, Police Officer O'Donnell was shown a video from a cellphone by one of the customers. 
After Mr. Garcia was robbed, he went to the shelter where he resided. There, he told several security personnel who he described as "Army Officers" that he had been robbed. One of the security personnel called 911. After the police arrived, one of the security personnel [*6]translated the events as related by Mr. Garcia to the police.
The defendant contends the People failed to disclose with their certificate of compliance the names and contact information for these individuals as well as the recorded video from one of the Seven Eleven store customers.
The prosecutor explained that none of the Seven Eleven customers or employees or security personnel witnessed the robbery of Mr. Garcia. Furthermore, none of these Seven Eleven witnesses wanted to provide their names and contact information to the responding police officers. Relatedly, the Seven Eleven customer who showed a police officer a video recorded on his/her cellphone attempted but failed to email the video to the Police Officer O'Donnell. Officer O'Donnell then took three photographs of portions of the video on her cellphone. The prosecutor explained those three images taken by Officer O'Donnell were provided to the defendant in the discovery.
As the People point out, these Seven Eleven individuals refused to disclose their names and contact information to the responding police officers and were clearly not under the direction or control of the prosecution. Under these circumstances, CPL §245.20(2) does not impose a duty on the People to ascertain the names and contact information of these uncooperative individuals. Moreover, given the record evidence thus far developed, there is nothing to suggest these individuals, as well as the two shelter security personnel had any evidence or information in their respective possession that relate to the subject matter of the case. (see People v Robbins, 206 AD3d 1069, [3rd Dept 2022].)
The defendant also alleged that just prior to Mr. Garcia's identification of the defendants while he was in the ambulance, footage from Police Officer Puckey's body worn camera depicted another police officer displaying an image or document on his cellphone to Mr. Garcia just prior to asking Mr. Garcia to identify the defendants. The prosecutor explained that the uniformed person depicted in the footage of Police Officer's Puckey's body worn camera was an emergency medical technician (hereinafter "EMT") who was rendering medical assistance to Mr. Garcia. The EMT was using Google Translate with which to translate instructions to Mr. Garcia. According to the prosecutor, plainly visible on the Police Officer Puckey's video footage is the EMT's uniform and patch that identified him as an EMT. Moreover, the audio track of Police Officer Puckey's born worn camera also picks up the EMT's instructions in English to Spanish as he renders medical assistance to Mr. Garcia. 
Accordingly, the defendant's motion to invalidate the People's certificate of compliance on these grounds is denied.

 Police Records
The defendant contends the People failed to provide a medical treatment of prisoner report and an aided report for the complainant. The prosecutor explained that a medical treatment of prisoner report was not generated but conceded that he overlooked a three page aided report that was prepared for the complainant.
When a defendant challenges a certificate of compliance on the ground that "discoverable material was provided after the certificate of compliance was filed, the prosecutor must account for the belated disclosure and provide the court with sworn allegations of fact that allow the court to determine whether the prosecutor exercised due diligence " (see People v Hutchins, 74 Misc 3d, 1234(A), [Sup Ct, Kings Cty 2022][quoting People v Perez, 73 Misc 3d 171, Sup Ct, Queens Cty 2021] ["upon a challenge to a certificate of compliance, the People must articulate their efforts to comply with CPL 245.20(1) with respect to the statutory [*7]subsections or specific items of discovery at issue"]). As the court in People v Georgioulos, 71 Misc 3d 1215(A)(Sup Ct Queens County 2021) observed, "good faith and due diligence are the touchstones by which a certificate of compliance must be evaluated." Nevertheless, good faith alone, standing alone, cannot cure a lack of due diligence. People v Bay, — NY3d —, 2023 NY Slip Opinion 06407 (2023). In Bay, the Court of Appeals set forth a number of factors for assessing due diligence. These factors include (1) efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, (2) the volume of discovery provided and outstanding, (3) the complexity of the case, (4) how obvious any missing material would likely have been to a prosecutor exercising due diligence, (5) the explanation for the discovery lapse, and (6) the People's response when apprised of any missing discovery. (Bay, — NY3d &mdash, 2023 NY Slip Opinion 06407 *13)
In this case, the prosecutor made no efforts to ascertain the existence of the aided report prior to filing and serving the certificate of compliance on August 24, 2023. The prosecutor simply stated he was unaware that an aided reported had been prepared in this case. He explained that in many assault or robbery cases aided reports are not generated although they were required. (affirmation of prosecutor at 7 and reply affirmation at 3) Here, the prosecutor admittedly made no efforts to ascertain the existence of the aided report before filing the certificate of compliance despite facts that strongly suggested that one was required given Mr. Garcia's injuries. The prosecutor's reliance on his knowledge of past failures to generate aided reports in an effort to mitigate his total lack of due diligence, is, in this court's view, the antipathy of good faith and due diligence.
The People maintain that the amount of discovery provided with the initial discovery disclosure was substantial. The prosecutor asserted more than 200 items of discovery regarding the defendant was provided, many of which contained "dozens of pages of documents", including Mr. Garcia's medical records that consisted of more than 90 pages. (reply affirmation of prosecutor at 3) The People attached to their certificate of compliance a computer generated list that logged their disclosures for the defendant in compliance with CPL § 245.50(1). The computer generated print out for the disclosures provided to the defendant totaled 101 discrete discovery files, not "more than 200" as claimed by the prosecutor. The discovery in this case was overstated by the prosecutor by nearly half and does mitigate in favor of the People.
The case itself, in terms of evidentiary or factual complexity, is straightforward and uncomplicated.
During the grand jury proceeding on June 30, 2023, Mr. Garcia testified to his serious injuries. During the course of his testimony, the prosecutor introduced four exhibits, photographs depicting Mr. Garcia's facial injuries that included a fractured nose. Relatedly, Police Officer O'Donnell also testified that an ambulance had been called. Moreover, the prosecutor acknowledged that he obtained medical records regarding the treatment rendered to Mr. Garcia. All these facts, taken together, should have made it obvious that an aided report would have been generated to a prosecutor exercising due diligence.
When apprised of the missing aided report on October 10, 2023, the prosecutor disclosed the report to the defendant 20 days later, on October 30, 2023. CPL§ 245.60 provides that "If either the prosecution or the defendant subsequently learns of additional material or information which it would have been under a duty to disclose pursuant to any provisions of this article had it known of it at the time of a previous discovery obligation or discovery order, it shall expeditiously notify the other party and disclose the additional material and information as [*8]required for initial discovery under this article." The People do not explain why there was a lag of 20 days in disclosing and providing the aided report to the defendant. The prosecutor did not provide an account of his efforts to obtain the report. Nor did he provide any reason why it took 20 days to disclose the report after been apprised that it was missing.
Apart from the failure to demonstrate due diligence, the People interposed claims that defendant failed to notify the People of the missing aided report as soon as practicable and he failed to establish prejudice. Both assertions by the People are rejected. (See People v Bay, Id.; People v Adrovic, 69 Misc 3d 563, [Crim Ct, New York County, 2020] ["the People's obligation to provide discovery, and to certify compliance with that obligation is not relieved by an absence of prejudice to the defendant."]; People v Aquino, 72 Misc 3d 518 [Crim Ct Kings County, 2021].) This court finds the defendant following his review of the discovery provided with the People's certificate of compliance of August 24, 2023, challenged the People's certificate as soon as practicable. (see CPL §§ 245.50[4][b], [c].)
Indeed, none of the factors enunciated by the Court of Appeals in evaluating due diligence and good faith efforts weighs in favor of the People. This court finds the People did not exercise due diligence and made reasonable inquires to identify the aided report. Accordingly, the court concludes that the People's certificate is invalid and the People's concurrent statement of readiness was illusory. Therefore, the People are charged for the period from August 24, 2023 until October 30, 2023.

Law Enforcement Disciplinary Records
The defendant claims he is entitled to the underlying documentation regarding Civilian Complaint Review Board (CCRB) and Internal Affairs Bureau (IAB) investigations concerning police witnesses. He also asserts that the People have only provided incomplete information in the summary disclosure letters they filed for police witnesses. The People contend that such material is not discoverable because the discovery statute requires only that they provide impeachment information, rather than the disclosure of the underlying records. They assert that they have complied with their discovery obligations by providing the disclosure letters regarding the allegations against each police witness. 
Based on the language of the statute, discovery is limited to material that is "related to the subject matter of the case." (see CPL 245.20 [1]) Moreover, CPL § 245.20(2) limits the items deemed to be in the People's custody and control to those items "related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency." These limiting clauses circumscribes the People's discovery obligations under paragraph (k) to impeachment material that is related to the subject matter of the case. (People v Perez, 73 Misc 3d 171 [Sup Ct, Queens Cty 2021][court determined that the limiting language in CPL § 245.20(2) removed police personnel records from being in the People's constructive possession]; People v Florez, 74 Misc 3d 1222(A) [Sup Ct, Nassau Cty, 2022][court determined qualifiers such as '"relates to the subject matter of the case"' and '"related to the prosecution of a charge"' limits automatic discovery and that which is deemed to be in the People's constructive possession."].) To be discoverable, the alleged misconduct disclosed by the People in their summary letter for each officer must be related to the subject matter of the case. (see People v Johnson, 218 AD3d 1347 [4th Dept 2023]; People v Hutchins, 74 Misc 3d 1234(A), [Sup Ct, Kings Cty 2022].)
The defendant has not shown that any of the police misconduct disclosed as potential impeachment is related to the subject matter of this case. In the absence of a showing that any of [*9]the misconduct is related to the subject matter of this case, this court finds that the People have complied with the statutory automatic discovery requirement for impeachment material by the submission of LEOW letter summarizing each officer's existing disciplinary history and they need not obtain the underlying documentation. (see People v Johnson, Id.; People v Williams, 76 Misc 3d 712 [Sup Ct, Queens Cty 2022].) Accordingly, the defendant's motion to invalidate the People's certificate of compliance on this ground is denied.

Redactions to Police Reports
The defendant alleges in a conclusory manner without any documentary support that the People "significantly redacted copies" of the complainant report, DD5s, crime report, the scratch complaint report, report of last or stolen property and Mr. Garcia's medical records.(affirmation of defendant's attorney at 20) CPL §§ 245.20(1)(c),(d), and (6). Conspicuously, the defendant failed to attach for the court's review any of the police documents he claims were improperly redacted by the People. The court declines to invalidate the People's certificate of compliance on this basis. However, the parties are directed to confer with each other to resolve any claims of improper redactions. 

 MOTIONS TO SUPPRESS
The defendant moves for a Mapp/Dunaway hearing. The defendant's motion is denied based on the People's affirmation that no property was recovered from the defendant. (affirmation of prosecutor at 9)
The defendant's motion to suppress identification evidence is granted to the extent that a Wade/Dunaway hearing is ordered.
The defendant's motion to suppress statement evidence is granted to the extent that a Huntley/Dunaway hearing is ordered. The hearing court will determine whether the defendant's statements were made in violation of his Miranda rights and whether the statements were involuntarily made within the meaning of CPL §§ 60.45, 60.45(2).
The defendant's request for the People to produce at the hearing physical evidence, if any, is denied. (see People v Robinson, 118 AD2d 516 [1st Dept 1986].) If the defense wants to inspect the physical evidence prior to trial, the People are hereby ordered to arrange a mutually convenient time to do so with counsel. (CPL § 245.20[1][m]["There is also a right to inspect, copy, photograph, and test the listed tangible objects (obtained from, or allegedly possessed by, the defendant."])

 PRECLUSION OF EVIDENCE
The People failed to address the defendant's motion to preclude any unnoticed statement or identification evidence. Accordingly, the defendant's motion to preclude unnoticed statement and identification evidence is granted to the extent that the People are precluded from introducing at trial such evidence for which timely statutory notice was required but not served. (CPL § 710.30[3]; People v Grajales, 8 NY3d 861, 862 [2007]; People v Nolasco, 70 AD3d 972, 973 [2d Dept.2020]). The determination as to whether a statement was properly noticed is left to the sound discretion of the hearing or trial judge.

 SANDOVAL/MOLINEUX 
 RELIEF
The defendant's request for a Sandoval/Molineux hearing and, ultimately, the preclusion of evidence of prior bad acts is referred to the trial court. The People are reminded that the disclosure of Sandoval and Molineux evidence that they intend to introduce at trial shall be made in accordance with the time frame set forth in CPL § 245.10(1)(b) and 245.20(3).

ORDER TO COUNSEL
This court issues this order as both a reminder and a directive that counsel uphold their constitutional, statutory and ethical responsibilities in the above-captioned proceeding:
To the Prosecutor:
The District Attorney and the Assistant responsible for the case, or, if the matter is not being prosecuted by the District Attorney, the prosecuting agency and its assigned representative, is directed to make timely disclosures of information favorable to the defense as required by Brady v Maryland, 373 US 83 (1963), Giglio v United States, 405 US 150 (1972), People v Greasley, 54 NY2d 510 (1981), and their progeny under the United States and New York State constitutions, and pursuant to Criminal Procedure Law (CPL) article 245 and Rule 3.8(b) of the New York State Rules of Professional Conduct, as described hereafter.
• The District Attorney and the Assistant responsible for the case have a duty to learn of such favorable information that is known to others acting on the government's behalf in the case, including the police, and should therefore confer with investigative and prosecutorial personnel who acted in this case and review their and their agencies' files directly related to the prosecution or investigation of this case.
• Favorable information could include, but is not limited to:
a) Information that impeaches the credibility of a testifying prosecution witness, including (i) benefits, promises, rewards or inducements, express or tacit, made to a witness by a law enforcement official or law enforcement victim services agency in connection with giving testimony or cooperating in the case; (ii) a witness's prior inconsistent statements, written or oral; (iii) a witness's prior convictions and uncharged criminal conduct; (iv) information that tends to show that a witness has a motive to lie to inculpate the defendant, or a bias against the defendant or in favor of the complainant or the prosecution; and (v) information that tends to show impairment of a witness's ability to perceive, recall, or recount relevant events, including impairment of that ability resulting from mental or physical illness or substance abuse.
b) Information that tends to exculpate, reduce the degree of an offense, or support a potential defense to a charged offense.
c) Information that tends to mitigate the degree of the defendant's culpability as to a charged offense, or to mitigate punishment.
d) Information that tends to undermine evidence of the defendant's identity as a perpetrator of a charged crime, such as a non-identification of the defendant by a witness to a charged crime or an identification or other evidence implicating another person in a manner that tends to cast doubt on the defendant's guilt.
e) Information that could affect in the defendant's favor the ultimate decision on a suppression motion.
• Favorable information shall be disclosed whether or not it is recorded in tangible form, and irrespective of whether the prosecutor credits the information.
• Favorable information must be timely disclosed in accordance with the United States and New York State constitutional standards, and in accordance with the timing provisions of CPL article 245. The prosecutor is reminded that the obligation to disclose is a continuing one. Prosecutors should strive to determine if favorable information exists. The prosecutor shall disclose the information expeditiously upon its receipt and shall not delay disclosure if it is obtained earlier than the time period for disclosure in CPL 245.10(1).
• A protective order may be issued for good cause pursuant to CPL 245.70 with respect to [*10]disclosures required under this order.
• Failures to provide disclosure in accordance with CPL Article 245 are subject to the available remedies and sanctions for nondisclosures pursuant to CPL 245.80.
• Only willful and deliberate conduct will constitute a violation of this order or be eligible to result in personal sanctions against a prosecutor.
To Defense Counsel:
Defense counsel, having filed a notice of appearance in the above captioned case, is obligated under both the New York State and the United States Constitution to provide effective representation of defendant. Although the following list is not meant to be exhaustive, counsel shall remain cognizant of the obligation to:
a) Confer with the client about the case and keep the client informed about all significant developments in the case;
b) Timely communicate to the client any and all guilty plea offers, and provide reasonable advice about the advantages and disadvantages of such guilty plea offers and about the potential sentencing ranges that would apply in the case;
c) When applicable based upon the client's immigration status, ensure that the client receives competent advice regarding the immigration consequences in the case as required under Padilla v Kentucky, 559 US 356 (2010);
d) Perform a reasonable investigation of both the facts and the law pertinent to the case (including as applicable, e.g., visiting the scene, interviewing witnesses, subpoenaing pertinent materials, consulting experts, inspecting exhibits, reviewing all discovery materials obtained from the prosecution, researching legal issues, etc.), or, if appropriate, make a reasonable professional judgment not to investigate a particular matter;
e) Comply with the requirements of the New York State Rules of Professional Conduct regarding conflicts of interest, and when appropriate, timely notify the court of a possible conflict so that an inquiry may be undertaken or a ruling made;
f) Possess or acquire a reasonable knowledge and familiarity with criminal substantive, procedural and evidentiary law to ensure constitutionally effective representation in the case; and
g) When the statutory requirements necessary to trigger required notice from the defense are met (e.g., a demand, intent to introduce particular evidence, etc.), comply with the statutory notice obligations for the defense as specified in CPL 250.10, 250.20, and 250.30.

 LEAVE TO FILE FURTHER MOTIONS
The branch of the motion requesting leave to file additional motions is granted to the extent recognized by CPL § 255.20(3).
This constitutes the decision and order of the court.
The Clerk of the court is directed to distribute copies of this decision and order to the attorney for the defendant and to the District Attorney.
January 11, 2024
______________________
GARY F. MIRET, A.J.S.C.

Footnotes

Footnote 1: The defendant also filed a Reply on November 14, 2023; the People filed a Response to the Reply on November 15, 2023.

Footnote 2: Garcia identified defendant Cutler to Police Officer O'Donnell by the white shirt he wore at a show-up after both defendants were detained in the vicinity of 158th Avenue and Rockaway Boulevard, about six to seven blocks from the Seven Eleven store. (GJ tr at 4, 18 -20, 22)

Footnote 3: To further clarify, Mr. Garcia testified that the shelter was half a kilometer from the shelter where he lived. (GJ at 4) He also said he was already half way to the shelter when he was beaten and robbed of his cellphone. (GJ tr at 6)